The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. The Industrial Commission has jurisdiction of the parties and of the subject matter. All parties are properly before the Industrial Commission.
2. The parties stipulated into evidence Plaintiff's Exhibit Nos. 1 through 6 and No. 9.
*************
Based upon the competent evidence of record herein, the Full Commission makes the following
FINDINGS OF FACT
1. On May 7, 1992 plaintiff was housed at the Caledonia Correctional Institution in F-Block in Unit IV. Plaintiff had been an inmate at Caledonia for approximately two months.
2. Gerald Herring was also an inmate at Caledonia Prison at that time. Gerald Herring is a homosexual. For a period of approximately three weeks prior to May 7, 1992 Gerald Herring had begun to make sexual advances toward plaintiff. Plaintiff informed Gerald Herring that he was not interested but Gerald Herring continued to make advances toward plaintiff. Gerald Herring's behavior was so obvious and noticeable toward plaintiff that other inmates began to ask plaintiff if he was Gerald Herring's "state daddy" (sexual partner).
3. Gerald Herring had a prior history of violence toward fellow inmates and had previously been disciplined on several occasions for his violent acts and assaultive behavior. Inmate Robert Tevepaugh who was housed with plaintiff in F-Block at the time of the assault on plaintiff, warned plaintiff that Gerald Herring was violent to those to whom he was sexually attracted.
4. As time passed plaintiff became afraid of Gerald Herring, and as a result of this fear he spoke to Correction Officer Richard Patterson. He told Officer Patterson that he was afraid of Gerald Herring and he asked for a transfer from the cell block. Officer Patterson did not have the authority to transfer plaintiff.
5. Plaintiff could have requested protective custody but he did not because he believed that once an inmate requested protective custody the reputation of a "check-off" follows him from prison to prison. Once an inmate obtains the reputation of a check-off, if he moves from prison to prison the inmates immediately begin to harass him as soon as he arrives on the prison grounds.
6. Gerald Herring continued his sexual advances toward plaintiff and he became very protective of plaintiff. Gerald Herring never threatened plaintiff physically, but the sexual advances he made toward plaintiff became an annoyance to plaintiff.
7. On May 7, 1992 Gerald Herring assaulted plaintiff by hitting him in the head with a 14-pound metal mop-wringer. Gerald Herring obtained the mop-wringer from Cell No. 1 in F-Block. This cell was used as a storage area for cleaning supplies. The mop-wringer had been left unattended by Caledonia Correctional Institution officials. This allowed Gerald Herring to obtain free access to the mop-wringer and use it as the weapon in his assault on plaintiff. Plaintiff was sitting at a table writing a letter when Gerald Herring came up to him and hit him several times with the mop-wringer. The first blow from the mop-wringer knocked plaintiff to the floor. Gerald Herring hit plaintiff again while he was lying on the floor.
8. Immediately after the assault plaintiff went to the bars and called for assistance. When the officer responded plaintiff was found to be bleeding heavily from head wounds. Plaintiff began to feel dizzy and sick and subsequently collapsed after he was outside the bars. He was helped to his feet by the officers and then transported to a hospital for medical treatment. Plaintiff received twenty-two stitches in his head.
9. Defendant did not abide by the provisions of Exhibits Nos. 1, 2 and 3 which are sections of the North Carolina Administrative Code designated as Department of Correction Policies and Procedures, specifically those sections of the policies and procedures which describe the general duties and responsibilities of Department of Correction personnel. These policies and procedures also define contraband and further indicate that, "Any weapon, tool or other item that can be used to . . . aid in an assault . . . will be considered contraband."
10. At the time of the assault Officers Ronnie Ingram, Wilson Creighton-Bey, and Richard Patterson, and Sergent Andrew Davenport were on duty. All of those correctional officers knew that cell No. 1 was used as a storage area for cleaning supplies and that the mop-wringer was kept in the cell unlocked, unsecured and available for inmates to use for cleaning their cells. All of said correctional officers knew or should have known from prior experience that the mop-wringer could be used as a weapon, and that it should have been secured such that it was not available for use by an inmate without supervision. Each of these officers was able to foresee, or should have been able to foresee that a violent inmate such as Gerald Herring might use an apparatus such as the mop-wringer as a weapon to assault a fellow inmate. On May 7, 1992 the failure of Ronnie Ingram, Wilson Creighton-Bey, Richard Patterson, and Andrew Davenport to secure the mop-wringer so that it could not be inappropriately used by inmates constituted negligence.
11. In September 1990 inmate Gerald Herring was found guilty by the disciplinary committee for assaulting a fellow inmate with a mop-wringer and was punished.
12. Plaintiff sustained damages as a result of the assault by Gerald Herring. Plaintiff retained three permanent scars on his head and has continued to suffer from headaches. Plaintiff did not have these headaches prior to the assault. He also experienced pain and suffering as a result of the assault.
13. Defendant has failed to prove by the greater weight of the evidence that plaintiff's failure to request placement into protective custody constituted contributory negligence on his part.
**************
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Ronnie Ingram, Wilson Creighton-Bey, Richard Patterson, and Andrew Davenport were negligent in failing to secure the mop-wringer. These employees were also negligent in failing to supervise the actions of Gerald Herring, thereby allowing him to use the mop-wringer as a weapon to assault plaintiff.
2. The negligence of the above named employees was the proximate cause of injuries sustained by plaintiff when he was assaulted by Gerald Herring. Plaintiff has permanent scars on his head and has continued to suffer from headaches. He also experienced pain and suffering as a result of the assault.
3. Plaintiff is entitled to an award of damages as a result of his injuries occasioned by the negligence of defendant's employees.
4. Plaintiff was not contributorily negligent.
***************
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following
ORDER
Defendant shall pay damages to plaintiff in the amount of $6,000.00.
Defendant shall pay the costs due this Commission.
 S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________ COY M. VANCE COMMISSIONER
BSB:be